# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MICHELLE FOSTER, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00066 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the | | |
| Social Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I. Introduction

Plaintiff Michelle Foster brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Foster filed her application on October 12, 2010, alleging that she has been disabled since April 14, 2008.[2] (*PageID#* 248-55). She claims to be disabled due to depression, fibromyalgia, chronic fatigue syndrome, bi-polar disorder, degenerative disc disease, and bicuspid heart valve. (*PgaeID#* 248, 284). After her application was denied during the initial administrative

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Under the controlling regulations, Plaintiff cannot receive benefits for any period prior to the filing of her application for SSI benefits. 20 C.F.R. § 416.335. SSI benefits cannot be awarded retroactively. SSR 83-20, 1983 WL 31249, at *1, *7 (1983).

proceedings, Foster was provided a hearing before Administrative Law Judge ("ALJ") Thomas R. McNichols II. On November 6, 2012, the ALJ issued a decision concluding that Foster was not under a "disability" within the meaning of the Social Security Act, and was therefore not eligible for SSI. (*PageID##* 90-107). The ALJ's decision and the resulting denial of benefits became the final decision of the Social Security Administration.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #11), the administrative record (Doc. # 6), and the record as a whole.

Foster seeks an Order reversing the ALJ's decision and granting her benefits because the ALJ's decision was not supported by substantial evidence. In the alternative, Foster seeks an Order remanding the ALJ's decision to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II. Background

### A. Plaintiff and Her Testimony

Foster was 37 years old on the date her application was filed, and is thus considered to be a "younger individual age 18-49" for purposes of resolving her SSI claim. *See* 20 C.F.R. § 416.963; *see also PageID#* 105. Foster has a high school education, *see* 20 C.F.R. § 416.964; *see also PageID#* 105, and past relevant work as a retail assistant manager, performed at the heavy level. (*PageID#* 105).

Foster testified she is 5' 8" and weighs approximately 210 pounds.  (*PageID#* 116). She previously weighed between 160 to 165 pounds in 2009.  (*PageID#* 117).  She attributes the weight gain to her inability to exercise in light of her physical impairments. (*Id.*).

Foster lives with her three minor children, her mother, and her sister in her mother's house.  (*PageID#* 118).  They have lived together for approximately 14 months. (*Id.*).  Foster testified her sister is also disabled, "[s]he's got the same thing I do."  (*Id.*). Foster has a driver's license but only drives once a week, "if I feel up to it." (*PageID#* 119).  She stated she has trouble remembering which pedal is for the gas and which pedal is for the brake.  (*Id.*).  Her brother-in-law dropped her off at the hearing.  (*Id.*).

Foster alleges she became disabled in April 2009, while working as a supervisor at a party store.  (*PageID#* 120).  She worked at the store for two years prior to leaving. (*Id.*).  Regarding her job duties, she stated, "I counted drawers.  I opened and closed the store.  I counted the drawers down.  I watched over the other workers.  I lifted shelves.  I put decorations up." (*Id.*).  She testified part of the reason she stopped working there was because she could no longer "count the drawers down anymore . . . . things that I learned when I was younger I don't remember anymore." (*PageID#* 120-21).  She also testified she stopped working due to pain from fibromyalgia, which she was diagnosed with approximately 15-16 years ago. (*PageID#* 121).  Foster testified the pain from fibromyalgia has "progressed . . . from [where] it was just my arm hurting to now it's everywhere, every day." (*PageID#* 122).  Foster tried physical therapy and exercising,

but they did not help. (*Id.*). She stated the medication she takes only "helps to a point," but if she did not take it she "would be screaming with pain." (*PageID#* 123). Foster is able to walk and estimates she can walk about half a block without a cane or anything else to assist her. (*Id.*). Foster testified she was also diagnosed with chronic fatigue syndrome about 10 years ago, which causes her to sleep a lot and constantly makes her feel tired. (*PageID#* 124).

Foster suffers from depression, and cries approximately four or five times a week. (*PageID#* 127). She went to counseling once a week with a psychologist for a few months but stated at the time of the hearing she had stopped going about a month earlier because, "it's too far for me to drive and I'm afraid I'll have an accident." (*PageID#* 129).

Foster estimates that because of pain in her legs and feet she can only stand for about 5 minutes at a time. (*PageID#* 132). She can sit for about 30 to 45 minutes at a time if she "pushes" herself, but she "pays for it" the next day with extra pain. (*Id.*). She can use her arms, hands, and fingers "most of the time." (*Id.*). She estimates she can only lift 5 pounds, and does not attempt to lift a gallon of milk, "because I could drop it." (*PageID#* 133). She is able to climb steps but must do so "very slowly." (*Id.*). Foster also testified she does not cook, wash dishes, sweep, mop, vacuum, wash clothes, or do anything in terms of household chores due to be pain. (*PageID#* 134-35). She is able to care for her children by getting up with them in the morning, making sure their backpacks are ready for school and their homework is done. (*PageID#* 135). She testified she does

not go shopping for clothes, and only wears sweatpants and sweatshirts. (*Id.*). Other family members buy clothes for her children, and her mother does the grocery shopping. (*PageID#* 136). Foster also testified she never goes to the movies, likes to read, does not exercise, does not do yard work, does not take trips out of state, does not drink alcohol, does not smoke, and does not use drugs. (*PageID##* 136-38).

Foster further testified that she recently missed her best friend's wedding and her daughter's eighth grade graduation because of her impairments. (*PageID#* 147). She stated, "I mean I feel like I'm just taking up space. I can't do anything for anybody. I mean I still can show my kids love by reading to them and making sure they are taken care of that way but I can't go out and throw a ball to them . . . ." (*Id.*).

### B. Medical Evidence

The administrative record contains many medical records plus opinions by Foster's treating and non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Foster's physical and mental impairments with citations to specific evidence. The Commissioner likewise defers to the ALJ's factual recitation.

## III. Administrative Review

### A. "Disability" Defined

The Social Security Administration provides SSI to indigent individuals, subject to several eligibility requirements. Chief among these, for purposes of this case, is the

5

"disability" requirement. To receive SSI, an applicant must be a "disabled individual." 42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70. An SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

### B. <u>Social Security Regulations</u>

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *PageID#* 90; *see also* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. 404, Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### C. ALJ McNichols' Decision

At Step 1 of the sequential evaluation, the ALJ found that Foster has not engaged in substantial gainful activity since the application date of October 12, 2010. (*PageID#* 92).

The ALJ found at Step 2 that Foster has the following severe impairments: history of fibromyalgia with chronic fatigue syndrome; cervical and lumbar arthralgias; depression and anxiety with PTSD; and obesity. (*Id.*). The ALJ determined at Step 3 that Foster does not have an impairment or combination of impairments that meet or equal the level of severity described in 20 CFR Part 404, Subpart P, Appendix 1. (*PageID#* 97).

When determining Foster's residual functional capacity ("RFC") at Step 4, the ALJ found the following:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) subject to: no climbing of ladders, ropes, and scaffolds; occasional bending, squatting, stooping, kneeling, crouching and crawling; no exposure to hazards; no exposure to the general public; the opportunity to alternate between sitting and standing at 30-minute intervals; occasional work above shoulder level; low stress jobs, defined as no production quotas and no over-the-shoulder supervision; not required to maintain concentration on a single task for longer than 15 minutes at a time; and limited contact with co-workers and supervisors and no teamwork.

(*PageID#* 98). The ALJ further determined that Foster's "allegations of

disability are not supported by substantial objective medical evidence or clinical findings," and that "[s]uch allegations are found to be disproportionate and less-than-credible." (*Id.*, *PageID#* 105).

The ALJ next found that Foster is not capable of performing her past relevant work as a retail assistant manager. (*Id.*). The ALJ found that considering Foster's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Foster can perform. (*PageID#* 106). This assessment, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Foster was not under a disability and therefore not eligible for SSI. (*PageID#* 107).

## IV. Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to

support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.     Discussion**

    **A.     Plaintiff's Contentions**

Foster contends the ALJ erred in rejecting the opinion of her treating physician, Dr. Gebhart, and her treating psychologists, Drs. Glaus and Carlock. (Doc. #7, *PageID#* 564). Likewise, she argues the ALJ erred in relying on the opinions of the non-evaluating State agency psychologists over the opinion of the government's own evaluating psychologist, Dr. Bonds, and her treating psychologists, Drs. Glaus and Carlock. (*Id.*, *PageID#* 565). The Commissioner contends the ALJ's RFC finding is supported by

substantial evidence, he provided proper weight to the medical source opinions, and his decision should be affirmed.  (Doc. #11, *PageID#* 587).

### B. Medical Source Opinions

#### 1.

#### Treating Medical Sources

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ.  *Blakley,* 581 F.3d at 406 (6th Cir. 2009); *see Wilson*, 378 F.3d at 544 (6th Cir. 2004).  A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. (*Id.*).

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544).

More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources.  *See* 20 C.F.R. §

404.1527(c)(1)[3].  Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight.  This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  Social Security Ruling 96-6p.  Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization.  *See* 20 C.F.R. § 404.927(c), (e); *see also* Ruling 96-6p at *2-*3.

**2.**

**Non-Treating Medical Sources**

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  Social Security Ruling 96-6p, 1996 WL 374180 at *2.  Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source.  *See id.* at *2-*3.  The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."  20 C.F.R. § 404.1527(b).  To fulfill this promise, the Regulations require ALJs to

---

[3]20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion were previously found at 20 C.F.R. §§ 404.1527(d) and 416.927(d).

11

evaluate non-treating medical source opinions under the factors set forth in § 404.1527(d) including, at a minium, the factors of supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1527(e); *see also* Ruling 96-6p at *2-*3.

### C. <u>Analysis</u>

Foster's treating physician, Dr. Gebhart, completed a physical functioning assessment on September 20, 2012, indicating that Foster does not have the residual functional capacity on a sustained basis to do sedentary or light work. (*PageID#* 508-509). In November 2010, Dr. Gebhart opined that Foster can only stand/walk for 1 hour in an 8-hour workday, and for only 5 minutes without interruption. (*PageID#* 363). He concluded Foster could only sit for 4 hours in an 8-hour workday, and for only 30 minutes uninterrupted. (*Id.*). Foster could do no lifting. (*Id.*). Dr. Gebhart also opined that Foster was markedly limited in her ability to push/pull, bend, and reach; moderately limited in her ability to handle, and make repetitive foot movements; and not significantly limited in her ability to see, hear, and speak. (*Id.*). He observed that Foster suffers from severe pain, fatigue, and depression. (*Id.*). He concluded Foster was unemployable and that her conditions were expected to last 12 months or more. (*Id.*). Dr. Gebhart also provided office notes indicating that on examination, Foster had positive trigger points of fibromyalgia in multiple areas of her body. (*PageID##* 364, 513, 517, 522, 531). For example, it was noted that Foster has "multiple tender points, exquisitely tender." (*PageID#* 513).

Nonetheless, ALJ McNichols rejected Dr. Gebhart's opinion, finding "[s]uch conclusion is neither well-supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record." (*PageID#* 100). The ALJ further stated:

> The claimant's complaints of fatigue and "all over" joint pain are almost entirely subjective. While there is mention of tender points, it is not the requisite number to establish fibromyalgia as a valid diagnosis. Per the Social Security Act and regulations, an individual cannot establish medically determinable impairment or their disability by subjective complaints alone. A footnote in Social Security Rule 99-2p states that there is considerable overlap of symptoms between CFS and Fibromyalgia Syndrome (p. 45). Dr. Gebhart has often recommended exercise and state it would provide great benefit. The claimant, however, always has a reason that she is unable to exercise. She testified her knees hurt too much. X-rays of her knees taken recently showed no indication of limitation. The claimant is not treated by a rheumatologist despite [sic] address her fibromyalgia symptoms. She rated her pain as a 5-6/10 on a typical day and 8/10 on a bad day. She then testified all days are bad days, which seems contradictory.
>
> . . . .
>
> Other than the claimant's subjective allegations, Dr. Gebhart and his staff have reported relatively normal physical examinations according to their records. There are no x-rays discussing synovitis. The spine x-rays revealed moderate disc space narrowing at L5-S1 that would not substantiate her feelings and statements of debilitating pain. She has never followed up with physical therapy or EMG testing. Dr. Danopulos did not find any indications of radiculopathy. Once the heart study found no evidence to support her symptoms, she failed to follow through with the stress test. The claimant states Dr. Gebhart diagnosed her with fibromyalgia 15 years ago. Despite that, she continued to work, perform various daily activities and raise her children. The BDD physicians, after reviewing the medical evidence and minimal clinical findings, found her capable of medium exertion work activity. Dr. Danopulos similarly opined that she was capable of work activity. Thus the undersigned finds, given the totality of the evidence and the largely unsupported subjective nature of the claimant's complaints, that Dr. Gebhart's opinions as to employability are not supported by the evidence of record; as a result, they are given little weight.

13

(*PageID##* 100-101).  While the ALJ cites to a footnote in Social Security Ruling 99-2p, he fails to discuss SSR 12-2p, Titles II and XVI: Evaluation of Fibromyalgia.  This is so despite the fact that SSR 12-2p was effective as of July 25, 2012 – over three months prior to when the ALJ issued his decision in November 2012.

"Social Security Rulings are binding on all components of the Social Security Administration.  These rulings represent 'precedent final opinions and orders and statements of policy and interpretations that [the Social Security Administration] ha[s] adopted.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 834 (6th Cir. 2006) (quoting 20 C.F.R. § 402.35(b)(1)).  Specifically, SSR 12-2p "provides guidance on how [the SSA] develop[s] evidence to establish that a person has a medically determinable (MDI) of fibromyalgia (FM) and how [the SSA] evaluate[s] FM in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act (Act)." *2012 SSR LEXIS 1*, *1.

Particularly problematic with the ALJ's assessment in this case is that he concludes, apparently due to the lack of positive tender points, that Foster's diagnosis of fibromyalgia is not valid and Dr. Gebhart's opinion is not entitled to any weight.  *See PageID#* 100-01 ("While there is mention of tender points, it is not the requisite number to establish fibromyalgia as a valid diagnosis.").  Exhibiting the required number of positive tender points on physical examination, however, is only part of the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia (set forth in II. A. of 12-2p).  As SSR 12-2p states, the SSA also considers the 2010 ACR

14

Preliminary Diagnostic Criteria in determining whether a person established an MDI of FM. *2012 SSR LEXIS 1, *4.* Although the Commissioner argues Dr. Gebhart "does not identify a specific number of location of tender points that would support the degree of limitation due to fibromyalgia," Doc. #11, *PageID#* 591, the 2010 ACR Preliminary Diagnostic Criteria (set forth in II. B. of SSR 12-2p) – unlike the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia (set forth in II. A. of SSR 12-2p) – does not require a specific number of positive tender points in order to establish FM as an MDI. *See SSR 12-2p LEXIS 1*, *5. Rather, the criteria set forth in II. B. of SSR 12-2p requires the following:

1. A history of widespread pain (see section II.A.1.);

2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.).

*2012 SSR LEXIS 1, *8.* Thus, even assuming the ALJ correctly found that the evidence does not indicate the requisite number of positive tender points (11) – and therefore could not meet the criteria set forth in section II. A. of SSR 12-2p – the ALJ failed to properly consider whether Foster may have nonetheless established an MDI of FM based on the criteria set forth in section II. B. of SSR 12-2p. In fact, as previously stated, it does not appear from the ALJ's decision that he even considered any part of SSR 12-2p when

15

evaluating Foster's fibromyalgia and issuing his decision, despite it being effective as of July 25, 2012.  Accordingly, as the Court finds the ALJ failed to properly consider Foster's fibromyalgia pursuant to SSR 12-2p, the decision must be reversed.

The ALJ also erred in the same manner by evaluating the opinions of Drs. Glaus and Carlock under SSR 99-2p, rather than SSR 12-2p.  *See PageID#* 103 ("[The opinions of Drs. Glaus and Carlock] are clearly inconsistent with the evidence.  And, as noted, the diagnostic requirements envisioned in SSR 99-2p concerning fibromyalgia and chronic fatigue syndrome are not present.").  Particularly troublesome with the ALJ's rejection of Dr. Carlock's opinion is that he determined Dr. Carlock's opinion that Foster could not work due partly to her fibromyalgia "is well out of his area of expertise and again shows the extent of . . . reliance on the claimant's subjective allegations." (*PageID#* 103). As correctly noted by Foster, such a finding is at odds with SSR 12-2p, which specifically states that the evidence of a psychologist can be used when considering a person's fibromyalgia.  2012 SSR LEXIS 1, *10-11 ("In addition to obtaining evidence from a physician, we may request evidence from other acceptable medical sources, such as psychologists, both to determine whether the person has another MDI(s) and *to evaluate the severity and functional effects of FM or any of the person's other impairments.*") (emphasis added).

Accordingly, for all the above reasons, Foster's Statement of Errors is well taken.

## VI. Remand is Warranted

If the ALJ failed to apply the correct legal standards or his factual conclusions are

not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Foster, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g), due to the problems identified above. On remand, the ALJ should be directed to: (1) re-evaluate the medical source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Foster was under a disability and thus eligible for SSI during the period in question.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Michelle Foster was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

December 9, 2014

                                                                 s/Sharon L. Ovington
                                                                    Sharon L. Ovington
                                                  Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947,